UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

DAVARIOL MARQUAVIS TAYLOR,

                Plaintiff,                Case No. 2:24-cv-105

v.                                      Honorable Maarten Vermaat

UNKNOWN BUSH et al.,

                Defendants.
_____/

## OPINION

       This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*.[1] Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 1, PageID.5.)

       This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

---

[1] Although Plaintiff has had at least three cases dismissed on the grounds that they were frivolous, malicious, and/or failed to state a claim, Plaintiff has sufficiently alleged that he was in imminent danger of serious physical injury when he filed the complaint, and as such, he will be permitted to proceed *in forma pauperis* in this action.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

2

consent from the defendants[; h]owever, because they had not been served, they were not parties to th[e] action at the time the magistrate entered judgment.").[2]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Applying these standards, the Court will **first** dismiss Plaintiff's federal claims for failure to state a claim against Defendants James, Bolton, Nebel, and "Steve" Unknown. **Second**, Plaintiff's state law claims against Defendants James, Bolton, Nebel, and "Steve" Unknown will be dismissed without prejudice because the Court declines to exercise supplemental jurisdiction over them. **Third**, the Court will also dismiss, for failure to state a claim, the following federal claims against remaining Defendants Bush, Hares, Falk, and Bourdreau: claims of First Amendment retaliation against Defendants Hares, Falk, and Bourdreau, First Amendment claims for interference with access to the courts, Fourth Amendment claims, Eighth Amendment claims for unconstitutional conditions of confinement, denial of medical care, and detention within a

---

[2] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis*., 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

restraint chair for two days, Fourteenth Amendment claims, and claims of disability discrimination.

The following claims against Defendants Bush, Hares, Falk, and Bourdreau remain in the case: First Amendment retaliation claims against Defendant Bush; Eighth Amendment claims of sexual assault against Defendants Hares, Falk, and Bourdreau, Eighth Amendment claims for failure to intervene against Defendant Bush; and supplemental state law claims.

The Court will further deny Plaintiff's request for injunctive relief in the form of a PPO (personal protective order) and an order transferring Plaintiff to a new facility (ECF No. 3).

<u>Discussion</u>

## I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues the following MBP staff in their individual and official capacities: Inspector Unknown Bush, Nurse Supervisor Branda James, Unit Chief Unknown Hares, Grievance Coordinator Unknown Bolton, Medical Doctor Unknown Falk, Medical Doctor Unknown Bourdreau, and Corrections Officers Unknown Nebel and "Steve" Unknown.

Plaintiff alleges that, in December 2023, Defendant Falk "forcefully made [Plaintiff] give him oral sex." (Compl., ECF No. 1, PageID.9.) Plaintiff reported instances of sexual and physical abuse to the Attorney General's Office. (*Id.*) When Defendant Bush learned of Plaintiff's reports, he told Plaintiff that "he and his co-workers was gon [sic] make [Plaintiff's] life a living h*** . . . ." (*Id.* (asterisks added).)

4

On January 9, 2024, Plaintiff was placed in a restraint chair for two days where he was forced to "use the bathroom on [himself]." (*Id.*) Plaintiff does not further detail the circumstances surrounding this occurrence.

On an unspecified occasion, Defendant James told Plaintiff that she did not care about Plaintiff or his PREA complaints and would not help Plaintiff because Plaintiff was "ratting" on her and her co-workers. (*Id.*)

Plaintiff also claims to have been sexually assaulted by Defendant Bourdreau on three occasions, and by Defendant Hares and "other male staff" "everyday." (*Id.*) On March 18, 2024, Plaintiff was sexually assaulted by "C/Os" at the direction of Defendant Bush while on the way to the emergency department. (*Id.*) On March 20, 2024, and May 6, 2024, Defendant Falk went into Plaintiff's cell and required Plaintiff to watch him masturbate. (*Id.*)

Plaintiff alleges that Defendant Bush refused to process and investigate Plaintiff's claims of sexual abuse, telling Plaintiff to stop "telling on [them]." (*Id.*) On six occasions, Defendant Bush had the water in Plaintiff's cell turned off for one and a half weeks, and during the week of May 22, 2024, told Plaintiff to "suck his d*** and stop telling on them." (*Id.*) Plaintiff also claims that Defendant Bolton refuses to process Plaintiff's grievances and PREA complaints "on the orders of [Defendant] Bush." (*Id.*)

Additionally, Plaintiff alleges that lights have been on "all and everyday" inside Plaintiff's cell, that Plaintiff has not been allowed to shower or been given a clean cell or clothes for seven months, and that there is trash and other inmates' stool and blood on the walls and floor. (*Id.*)

Plaintiff indicates that he intends to bring claims for violations of his First, Fourth, Eighth, and Fourteenth Amendment rights. (*Id.*) He also references disability discrimination, which the Court construes as a claim under the Americans with Disabilities Act (ADA), Section 504 of the

Rehabilitation Act (RA), and "medical negligence," which the Court construes as a claim under state law. (*Id.*) Plaintiff seeks monetary and injunctive relief. (*Id.*, PageID.10.)

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

### A.     Section 1983 Claims

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr.*

6

*Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### 1.    Claims Against Defendants Nebel and "Steve" Unknown

Plaintiff lists Defendants Nebel and "Steve" Unknown as parties to this action but does not include any factual allegations against these Defendants in the body of his complaint. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (citing *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)) (requiring allegations of personal involvement against each defendant); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to

his injuries."). Because Plaintiff fails to even mention Defendants Nebel and "Steve" Unknown in the body of his complaint, his allegations fall far short of the minimal pleading standards under Federal Rule of Civil Procedure 8 and will be dismissed. *See* Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

### 2. First Amendment Retaliation Claims

Plaintiff states that he intends to bring claims against Defendants for First Amendment retaliation. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

With respect to the first element of a First Amendment retaliation claim, an inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016). Here, Plaintiff references grievances and complaints of sexual assault, both written and verbal. At this stage in the proceedings, Plaintiff has alleged sufficient facts to suggest that he engaged in protected conduct for purposes of his First Amendment claims. The Court will address the remaining elements of a First Amendment retaliation claim with respect to the individual Defendants.

8

### a.      Defendants Falk, Bourdreau, and Hares

Plaintiff alleges that, in December 2023, Defendant Falk forced Plaintiff to perform oral sex on him and, on two other occasions, went into Plaintiff's cell and masturbated in front of Plaintiff. (ECF No. 1, PageID.9.) Plaintiff also claims that Defendants Bourdreau and Hares entered Plaintiff's cell and sexually assaulted Plaintiff on multiple occasions in early 2024. (*Id.*) Actions such as this unquestionably satisfy the second element of a claim for First Amendment retaliation: actions sufficient to deter a person of ordinary firmness from engaging in protected conduct. However, Plaintiff has provided the Court with no facts that would plausibly suggest that any of the alleged instances of sexual misconduct were motivated by Plaintiff's protected conduct.

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). However, "alleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (holding that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive § 1915A screening]." (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))). Plaintiff merely alleges the ultimate fact of retaliation in this action. He has not presented any facts whatsoever to support his conclusion that Defendants Falk, Bourdreau, and Hares retaliated against Plaintiff because of his complaints. Accordingly, Plaintiff fails to state a retaliation claim against

Defendants Falk, Bourdreau, and Hares. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

### b. Defendant Bush

Plaintiff alleges that Defendant Bush told Plaintiff on more than one occasion to stop "telling on" him and other MBP staff and claims that, if Plaintiff complied, Defendant Bush would tell "his boys" to leave Plaintiff alone. (ECF No. 1, PageID.9.) Plaintiff also claims that Defendant Bush instructed corrections officers to sexually assault Plaintiff, refused to investigate Plaintiff's PREA complaints, directed Defendant Bolton not to process Plaintiff's grievances and complaints, turned the water off in Plaintiff's cell, and told the nurse supervisor to refrain from giving Plaintiff his "daily mental illness pills." (*Id.*, PageID.9–10). Taking these allegations as true, as is required at this stage, Plaintiff has alleged sufficient facts to state a claim for First Amendment retaliation against Defendant Bush.

### c. Defendant James

Plaintiff alleges that Defendant James told Plaintiff that she did not care about Plaintiff's PREA complaints and asked Plaintiff, "why would I help you when you keep 'ratting' on me and my co-workers?" (*Id.*) However, Plaintiff does not allege facts to suggest that Defendant James personally engaged in any adverse action against Plaintiff as a result. Accordingly, Plaintiff fails to state a First Amendment retaliation claim against Defendant James.

### d. Defendant Bolton

Plaintiff alleges that Defendant Bolton refused to process Plaintiff's grievances and PREA complaints upon the order of Defendant Bush. (*Id.*) The Sixth Circuit has recently held that destruction of grievances and interference with grievances may be adverse action for purposes of a retaliation claim. *See Richards v. Perttu*, 96 F.4th 911, 918–19 (6th Cir. 2024). However, Plaintiff fails to allege facts that would indicate that Defendant Bolton retaliated against Plaintiff because

of his complaints, or that Defendant Bolton was even aware of Plaintiff's alleged protected activity. Plaintiff merely alleges the ultimate fact of retaliation without any well-pleaded facts to support his conclusion. Accordingly, the Court will dismiss Plaintiff's First Amendment retaliation claim against Defendant Bolton.

### 3. First Amendment Access to the Courts Claims

Plaintiff states that he intends to bring a claim for violation of his right to "be free from . . . interference with using the court system" and his right to "assistance in bringing a legal claim." (ECF No. 1, PageID.5, 9.) It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The right of access to the courts prohibits prison officials from erecting barriers that may impede the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Bounds*, 430 U.S.at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824–25.

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351–53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir.

1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X*, 175 F.3d at 391. Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (discussing that *Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.*

The First Amendment does not guarantee Plaintiff "assistance" in pursuing a legal claim, only that Defendants may not erect barriers to Plaintiff's ability to do so. Plaintiff does not allege that Defendants deprived Plaintiff of access to a law library, pen and paper, notarial services, or stamps to mail documents in a way that would have injured Plaintiff's ability to pursue a direct appeal, habeas corpus petition, or civil rights claim. Moreover, Plaintiff fails to identify any litigation that was frustrated, let alone any non-frivolous litigation that was frustrated. For these

reasons, Plaintiff has failed to state a claim for interference with his First Amendment right to access the courts.

Plaintiff also alleges that Defendants interfered with Plaintiff's ability to file grievances. Not only do grievances fall outside of the types of actions protected by a First Amendment claim for access to the courts, but it is worth noting that Defendants' actions have not barred Plaintiff from seeking a remedy for his grievances. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415–16 (6th Cir. 2014) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982).

Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis*, 518 U.S. at 355 (requiring actual injury); *Bounds*, 430 U.S. at 821– 24 (1977). The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470–71 (6th Cir. 2001).

Accordingly, the Court will dismiss Plaintiff's First Amendment claim for violation of his right to access to the courts.

### 4.     Fourth Amendment Claims

Plaintiff alleges that Defendants engaged in unlawful searches and seizures in violation of Plaintiff's Fourth Amendment rights by "making [Plaintiff] get naked everyday" and by sexually assaulting Plaintiff. (ECF No. 1, PageID.9.) Plaintiff does not assert that he was "ma[de] [to] get naked" in the context of a search or that any of the alleged instances of sexual assault occurred during the course of a search. Thus, the initial question is whether Plaintiff's claims of sexual assault are properly covered by the Fourth Amendment.

The Fourth Amendment protects the "right of the people to be secure in their persons . . . against unreasonable searches and seizures." U.S. Const. amend. IV. In *Turner v. Long*, No. 23-5685, 2024 WL 3029249 (6th Cir. June 17, 2024), the Sixth Circuit recently considered a Fourth Amendment claim of bodily privacy outside of the context of a search. There, the Court held that the plaintiff's "forced exposure" of his buttocks and genitals to male and female staff over the course of three weeks while being forced to wear disintegrating paper underwear must be balanced with the Fourth Amendment factors set forth in *Turner v. Safley*, 482 U.S. 78, 89 (1987), to determine whether the regulation at issue was "reasonably related to legitimate penological interests." *Turner*, 2024 WL 3029249 at *4–5 (quoting *Safley*, 482 U.S. at 89). The Sixth Circuit relied upon its previous decision in *Kent v. Johnson*, 821 F.2d 1220 (6th Cir. 1987), which held:

> [T]here must be a fundamental constitutional right to be free from forced exposure of one's person to strangers of the opposite sex when not reasonably necessary for some legitimate, overriding reason, for the obverse would be repugnant to notions of human decency and personal integrity.

*Turner*, 2024 WL 3029249 at \*4 (quoting *Kent*, 821 F.2d at 1226). However, neither the Supreme Court nor the Sixth Circuit has specifically analyzed a Fourth Amendment theory in the context of a § 1983 claim involving sexual assault.

The Eighth Circuit, in evaluating the issue, has concluded that the Fourth Amendment's right to privacy "is not the proper avenue for a sexual assault claim against a state official" such as this. *Carnes v. Hall*, 665 F. Supp. 3d 831, 842 (E.D. Ky. 2023) (citing *Rogers v. City of Little Rock, Arkansas*, 152 F.3d 790 (8th Cir. 1998)). In *Rogers*, the Eighth Circuit considered a claim of sexual assault by a police officer following a traffic stop. *Rogers*, 152 F.3d at 794. The court reasoned that, "[t]he violation here is different in nature from one that can be analyzed under the fourth amendment reasonableness standard." *Id.* at 796. The assault did not take place during the search or seizure, but only after the plaintiff had gone home and, unlike the reasonableness analysis proper under the Fourth Amendment, "[n]o degree of sexual assault by a police officer acting under color of law could ever be proper." *Id.* As a result, the Eighth Circuit found that it was proper to analyze the plaintiff's claim of rape as a violation of the Fourteenth Amendment's Substantive Due Process Clause. *Id.* Likewise, the Fourth Circuit has held the Eighth Amendment "stands as the primary constitutional limitation associated with an inmate's bodily integrity," and that the right to bodily privacy afforded to inmates by the Fourth Amendment is narrowly limited to the involuntary exposure of the inmate's genitals in the presence of the opposite sex. *Wilkins v. Upton*, 639 F. App'x 941, 944 (4th Cir. 2016). These decisions of the Fourth and Eighth Circuits align with the Sixth Circuit's recent *Turner* decision, which also allowed for a Fourth Amendment claim, but only as it pertained to exposure of genitals to the opposite sex, not sexual assault. *Turner*, 2024 WL 3029249 at \*4.

While the plaintiff in *Rogers* was permitted to bring a claim for violation of the Fourteenth Amendment's Substantive Due Process Clause, *Rogers*, 152 F.3d at 796, there is no such need here in the prison context. In the case of a sexual assault that occurs by a state actor outside of the context of an arrest, no specific constitutional provision necessarily governs; therefore, the Fourteenth Amendment may apply. However, it is well-settled that the Fourteenth Amendment does not apply where there is a more specific constitutional provision available. *Albright,* 510 U.S. 266; *Graham v. Connor,* 490 U.S. 386 (1989). And the Sixth Circuit has recognized that "[f]ederal courts have long held that sexual abuse is sufficiently serious to violate the Eighth Amendment." *Rafferty v. Trumbull County*, 915 F.3d 1087, 1095 (6th Cir. 2019). Accordingly, the Court will dismiss Plaintiff's Fourth Amendment claims and will instead analyze Plaintiff's claims of sexual assault under an Eighth Amendment standard.

### 5.      Eighth Amendment Claims

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, directing that they must "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). For a prisoner to prevail on an Eighth Amendment claim, the prisoner must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer*, 511 U.S. at 834) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong,

an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety." *Id.* at 837.

Plaintiff appears to raise five Eighth Amendment claims. First, he contends that Defendants Falk, Bourdreau, and Hares violated Plaintiff's Eighth Amendment rights by sexually assaulting him. (ECF No. 1, PageID.9.) Second, Plaintiff indicates that he generally intends to raise an Eighth Amendment claim for failure to protect. (*Id.*) Third, Plaintiff alleges that he was subjected to unconstitutional conditions of confinement. (*Id.*) Fourth, Plaintiff generally alleges that he was subjected to "medical negligence." (*Id.*) And fifth, Plaintiff seeks to bring a claim related to his being held in a restraint chair for two days. (*Id.*, PageID.10.) The Court addresses each Eighth Amendment claim in turn below.

### a.        Sexual Assault Claims

As noted above, this Court and others "have long held that sexual abuse is sufficiently serious to violate the Eighth Amendment. . . . This is true whether the sexual abuse is perpetrated by other inmates or by guards." *Rafferty*, 915 F.3d at 1095 (citing *Farmer*, 511 U.S. at 848–49) (discussing inmate abuse); *Bishop v. Hackel*, 636 F.3d 757, 761 (6th Cir. 2011) (same); *Washington v. Hively*, 695 F.3d 641, 642 (7th Cir. 2012) (discussing abuse by guards). For this reason, the Court will allow Plaintiff to proceed with his Eighth Amendment claims of sexual assault against Defendants Falk, Bourdreau, and Hares.

### b.        Failure to Protect/Failure to Intervene Claims

Inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment. *Farmer*, 511 U.S. at 833. Thus, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984). In particular, because officials have "stripped [prisoners] of virtually every means of self-

protection[,]" "officials have a duty to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833. However, Plaintiff does not allege that he has been subjected to violence at the hands of other prisoners. He instead alleges that the violence has been perpetrated by state actors. For that reason, the Court will liberally construe Plaintiff's complaint as raising a claim for failure to intervene.

An officer is liable for another officer's use of force where the defendant "'observed or had reason to know that excessive force would be or was being used' *and* 'had both the opportunity and the means to prevent the harm from occurring.'" *Burgess v. Fischer*, 735 F.3d 462, 475 (6th Cir. 2013) (emphasis in original) (quoting *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997)); *accord Alexander v. Carter ex rel. Byrd*, 733 F. App'x 256, 265 (6th Cir. 2018); *Partin v. Parris*, No. 17-6172, 2018 WL 1631663, at *3 (6th Cir. Mar. 20, 2018). Here, Plaintiff alleges that Defendant Bush was aware that Plaintiff was being sexually assaulted and had the power and means to prevent the harm from occurring by telling "his boys" to leave Plaintiff alone. (ECF No. 1, PageID.9.) Accordingly, Plaintiff's Eighth Amendment claim against Defendant Bush for failure to intervene cannot be dismissed on screening.

However, to the extent that Plaintiff alleges that any other Defendant is liable for failing to intervene based upon their refusal to further investigate Plaintiff's complaints or process Plaintiff's grievances, Plaintiff's claims will be dismissed. The Sixth Circuit has held that where the defendant's only involvement in the allegedly unconstitutional conduct is "the denial of administrative grievances or the failure to act," the defendant cannot be liable under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). The reason is that there must be active unconstitutional behavior. Failing to intervene on a prisoner's behalf to remedy alleged

unconstitutional behavior does not amount to active unconstitutional behavior by a person who merely denies an administrative grievance. *Id.*

Likewise, to the extent that Plaintiff seeks to hold any Defendant liable for the actions of their subordinates, government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter*, 532 F.3d at 575–76; *Greene*, 310 F.3d at 899. The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee*, 199 F.3d at 300. Accordingly, any other claims against any other Defendants for failure to intervene will be dismissed.

###     c.     Conditions of Confinement Claims

Plaintiff alleges that, on six occasions, Defendant Bush shut the water off in Plaintiff's cell for one and a half weeks, that lights have been on "all and everyday" inside Plaintiff's cell, that Plaintiff has not been allowed to shower or been given a clean cell or clothes for seven months, and that there is trash and other inmates' stool and blood on the walls and floor. (ECF No. 1, PageID.9.) "Extreme deprivations are required to make out a conditions-of-confinement claim" under the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). To state an Eighth Amendment claim for unconstitutional conditions of confinement the deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment

is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "'The circumstances, nature, and duration of a deprivation . . . must be considered in determining whether a constitutional violation has occurred.'" *Boyington v. Walker*, No. 3:18CV-P134-GNS, 2018 WL 3649027, at *3 (W.D. Ky. Aug. 1, 2018) (quoting *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000)).

As to Plaintiff's claim that Defendant Bush shut off the water to Plaintiff's cell, being held in a cell without any running water for an extended period of time, coupled with a claim that the inmate did not have access other water facilities, could state a viable conditions of confinement claim. *See, e.g.*, *Bumpus v. Howard*, No. 3:19-cv-01081, 2020 WL 4431463, at *10 (M.D. Tenn. July 30, 2020). Here, however, Plaintiff does not allege that he did not have access to other water facilities or that Defendants deprived Plaintiff of water as needed. Plaintiff's allegation, therefore, does not state a claim that the conditions of his confinement deprived him of "the minimal civilized measure of life's necessities." *Hudson*, 503 U.S. at 9.

As to Plaintiff's remaining allegations that lights have been on inside Plaintiff's cell, that Plaintiff has not been allowed to shower or been given a clean cell or clothes, and that there is trash and other inmates' stool and blood on the walls and floor, the Court need not address the question of whether these conditions are sufficiently serious to satisfy the Eighth Amendment's objective standard. Plaintiff has not alleged any facts from which the Court could infer that any of the named Defendants were personally responsible for these conditions or knew of and disregarded any risks posed by these conditions.

While the Court does not minimize Plaintiff's experience, Plaintiff's allegations, at most, suggest nothing more than that Defendants may have been negligent in not discovering and addressing the alleged conditions sooner. However, allegations of negligence fall short of the deliberate indifference required to state an Eighth Amendment claim. *See Farmer*, 511 U.S. at 835 (holding that an Eighth Amendment violation requires a "state of mind more blameworthy than negligence"). Plaintiff's Eighth Amendment conditions of confinement claims that lights have been on inside Plaintiff's cell, that Plaintiff has not been allowed to shower or been given a clean cell or clothes, and that there is trash and other inmates' stool and blood on the walls and floor will, therefore, be dismissed.

### d.    Medical Care Claims

Plaintiff alleges in a conclusory fashion that he has been subjected to "medical negligence." (ECF No. 1, PageID.9.) The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976); *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer*, 511 U.S. at 834. To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000).

21

To the extent that Plaintiff seeks to bring an Eighth Amendment claim related to his medical care or lack thereof, Plaintiff fails to state a claim. Deliberate indifference as required to state an Eighth Amendment claim "entails something more than mere negligence" as alleged by Plaintiff. *Farmer*, 511 U.S. at 835. Plaintiff's complaint is wholly devoid of facts that would plausibly suggest that Plaintiff suffers from an objectively serious medical condition or that any named Defendant was deliberately indifferent with respect to that condition. Accordingly, the Court will dismiss any Eighth Amendment claim related to the provision of medical care.

### e.      Claims Related to Use of Restraint Chair

Plaintiff seeks to bring a claim related to his confinement in a restraint chair for two days. (ECF No. 1, PageID.10.) The Court construes this as raising an Eighth Amendment claim regarding the use of force.

The Eighth Amendment prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (quoting *Gregg v. Georgia*, 428 U.S. 153, 183 (1976)). Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification." *Id.* However, not every shove or restraint gives rise to a constitutional violation. *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986); *see also Hudson*, 503 U.S. at 9. "On occasion, '[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law.'" *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (quoting *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002)). Prison officials nonetheless violate the Eighth Amendment when their "offending conduct reflects an unnecessary and wanton infliction of pain." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995)); *Bailey v. Golladay*, 421 F. App'x 579, 582 (6th Cir. 2011).

22

Here, regardless of Plaintiff's minimal allegations about this use of force, his claims will be dismissed. As described above, it is Plaintiff's obligation to attribute factual allegations to particular Defendants, *see Twombly*, 550 U.S. at 544, and describe, with particularity, what each individual named Defendant did to violate Plaintiff's constitutional rights, *Lanman*, 529 F.3d at 684. Plaintiff must include sufficient facts to give each Defendant fair notice of his claims against them and the basis for those claims. *Twombly*, 550 U.S. at 544. Plaintiff fails to meet this minimal burden. He does not describe the circumstances surrounding his placement and detention within the restraint chair and does not include facts that would suggest that any named Defendant was personally responsible for placing Plaintiff in the restraint chair and keeping him there for two days. Accordingly, the Court will dismiss Plaintiff's claims related to his confinement within the restraint chair.

### 6.    Fourteenth Amendment Due Process Claims

Plaintiff indicates that he intends to bring claims for violation of his Fourteenth Amendment rights. (ECF No. 1, PageID.9.) He does not, however, indicate the provision of the Fourteenth Amendment under which he is asserting his claims. Based upon Plaintiff's allegations concerning sexual assault, the Court liberally construes Plaintiff's complaint as raising substantive due process claims. Further, given Plaintiff's allegations that Defendants Bush and Bolton refused to process Plaintiff's his internal complaints and grievances, the Court also construes Plaintiff's complaint as raising a claim for violation of Plaintiff's rights to procedural due process.

First, "[s]ubstantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). Specifically, "[s]ubstantive due process 'prevents the government from engaging in conduct that shocks the conscience or

interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)).

However, "[w]here a particular [a]mendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that [a]mendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright*, 510 U.S. at 273–75 (quoting *Graham*, 490 U.S. at 394). If such an amendment exists, the substantive due process claim is properly dismissed. *See Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013). In this case, the Eighth Amendment applies to Plaintiff's claims of sexual assault. Accordingly, any intended Fourteenth Amendment substantive due process claims will be dismissed.

Second, to the extent Plaintiff intends to raise a procedural due process claim related to the handling of his internal complaints and grievances, the courts have repeatedly held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL

24

105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendants' conduct did not deprive Plaintiff of due process. The Court will dismiss Plaintiff's Fourteenth Amendment due process claims.

### 7.      Fourteenth Amendment Equal Protection Claim

Plaintiff references an alleged violation of his right to equal protection. (ECF No. 1, PageID.5.) The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state an equal protection claim, Plaintiff must show "intentional and arbitrary discrimination" by the state; that is, he must show that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). Further, "'[s]imilarly situated' is a term of art—a comparator. . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)). Here, Plaintiff wholly fails to allege any facts suggesting that others who were similarly situated were treated differently than him. Indeed, Plaintiff does not even allege how he believes he was treated unequally. Accordingly, the Court will dismiss Plaintiff's equal protection claim.

### B.      Disability Discrimination

Plaintiff alleges that Defendants have violated his rights as a "mental disabled prisoner." (ECF No. 1, PageID.9.) The ADA and Section 504 of the RA "prohibit public or federally funded entities, including prisons, from discriminating against disabled individuals while operating

25

services or programs." *Finley v. Huss*, 102 F.4th 789, 819–20 (6th Cir. 2024) (internal citations omitted).

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Therefore, to state a claim under the ADA, a plaintiff must show that he is a "qualified person," that he has a "disability," and that he has been denied a "service, program, or activity" of the state or subjected to discrimination.

Similarly, Section 504 of the Rehabilitation Act protects any "otherwise qualified individual" from "be[ing] excluded from the participation in, be[ing] denied the benefits of, or be[ing] subjected to discrimination" under specified programs "solely by reason of her or his disability." 29 U.S.C. § 794(a).

The Supreme Court has held that Title II of the ADA applies to state prisons and inmates, *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210–12 (1998), and the RA has also been found to apply to state prisons and inmates. *See, e.g.*, *Wright v. N.Y. Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016) (discussing that "[b]oth the ADA and the RA undoubtedly apply to state prisons and their prisoners" (citation omitted)). The proper defendant for Title II ADA claims and RA claims is the public entity or an official acting in his official capacity. *Carten v. Kent State Univ.*, 282 F.3d 391, 396–97 (6th Cir. 2002); *see, e.g.*, *Tanney v. Boles*, 400 F. Supp. 2d 1027, 1044 (E.D. Mich. 2005) (citations omitted). Plaintiff sues Defendants in their official and individual capacities. Because Plaintiff may not pursue ADA and RA claims against Defendants in their individual capacities, any intended ADA and RA claims against Defendants in their individual capacities will be dismissed.

As to Plaintiff's official capacity ADA and RA claims, the State of Michigan (acting through the MDOC) is not necessarily immune from Plaintiff's claims under the ADA or the RA. *See, e.g.*, *Tanney*, 400 F. Supp. 2d at 1044–47. At this stage of the proceedings, the Court assumes, without deciding, that Defendants are not immune from liability in their official capacities under the RA or ADA. *See, e.g.*, *Tanney*, 400 F. Supp. 2d at 1047 (citing cases).

Turning to the merits of Plaintiff's ADA and RA claims, in this action, Plaintiff states in a conclusory fashion that he is "mental[ly] disabled. (ECF No. 1, PageID.9.) Even assuming that Plaintiff's mental health condition—whatever that may be—falls within the definition of "disability," Plaintiff's allegations do not show that he was excluded from a service or program, denied accommodation, or discriminated against *due to his disability*. Plaintiff's conclusory allegation of discrimination without specific supporting factual allegations fail to state a claim. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. For these reasons, Plaintiff's ADA and RA claims will be dismissed.

### C.    State Law Claims

To the extent that Plaintiff is asserting violations of state law, the Court notes that claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Any assertion that Defendants violated state law therefore fails to state a claim under § 1983.

To the extent that Plaintiff seeks to invoke this Court's supplemental jurisdiction over a state-law claim, the Court notes that in determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues."

*Landefeld*, 994 F.2d at 1182; *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." (internal quotation marks omitted). Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *See Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims." (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966))); *see also Southard v. Newcomb Oil Co., LLC*, 7 F.4th 451, 455 (6th Cir. 2021) (citing *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) (recognizing that once a federal court no longer has federal claims to resolve, it "should not ordinarily reach the plaintiff's state-law claims)); *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

Here, the Court will dismiss the federal claims against Defendants James, Bolton, Nebel, and "Steve" Unknown, and the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction with regard to Defendants James, Bolton, Nebel, and "Steve" Unknown. However, because Plaintiff continues to have pending federal claims against Defendants Bush, Hares, Falk, and Bourdreau, the Court will exercise supplemental jurisdiction over Plaintiff's state law claims against these Defendants.

### III.     Request for PPO and Transfer to a New Facility

On June 24, 2024, the Court received a letter from Plaintiff seeking injunctive relief in the form of a PPO and "transfer order [d]ue to the fact these staff won't stop and [Plaintiff] get[s] sexually abused everyday." (ECF No. 3.)

First, although it is possible for a prisoner to seek prospective injunctive relief, it is not possible for this Court to issue a personal protection order. Personal protection orders are a creation of state law. *See* Mich. Comp. Laws § 600.2950 *et seq.* This Court does not have jurisdiction to decide personal protection order disputes under the statute. *Simmons v. Simmons*, No. 1:19-cv-189, 2019 WL 5622442 (W.D. Mich. Apr. 12, 2019) *report and recommendation adopted*, 2019 WL 5622418 (W.D. Mich. Jul. 19, 2019); *see also Jackson v. United States*, No. 1:16-cv-20347, 2018 WL 3284444, at *2 (E.D. Mich. Mar. 14, 2018) ("PPOs are within the exclusive jurisdiction of the state court...."), *report and recommendation adopted* 2018 WL 2093947 (E.D. Mich. May 7, 2018) *certificate of appealability denied* 2018 WL 11303587 (6th Cir. Aug. 27, 2018) *cert. denied* 139 S. Ct. 1545 (2019). The Court therefore will deny Plaintiff's request for personal protection orders without prejudice to Plaintiff's pursuit of such a claim in state court.

As to Plaintiff's request that he be transferred to a new correctional facility and any further request for injunctive relief, preliminary injunctions are "'one of the most drastic tools in the arsenal of judicial remedies.'" *Bonnell v. Lorenzo*, 241 F.3d 800, 808 (6th Cir. 2001) (quoting *Hanson Trust PLC v. ML SCM Acquisition Inc.*, 781 F.2d 264, 273 (2d Cir. 1986)). The issuance of preliminary injunctive relief is committed to the discretion of the district court. *See Ne. Ohio Coal. v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006); *Nader v. Blackwell*, 230 F.3d 833, 834 (6th Cir. 2000). In exercising that discretion, a court must consider whether plaintiff has established the following elements: (1) a strong or substantial likelihood of success on the merits; (2) the likelihood of irreparable injury if the preliminary injunction does not issue; (3) the absence

of harm to other parties; and (4) the protection of the public interest by issuance of the injunction. *Nader*, 230 F.3d at 834. These factors are not prerequisites to the grant or denial of injunctive relief, but factors that must be "carefully balanced" by the district court in exercising its equitable powers. *Frisch's Rest., Inc. v. Shoney's, Inc.*, 759 F.2d 1261, 1263 (6th Cir. 1985); *see also S. Galzer's Distribs. of Ohio, LLC v. Great Lakes Brewing Co*., 860 F.3d 844, 849 (6th Cir. 2017) ("[T]hese are factors to be balanced, not prerequisites to be met."); *Nat'l Viatical, Inc. v. Universal Settlements Int'l, Inc.*, 716 F.3d 952, 956 (6th Cir. 2013) (same); *Ne. Ohio Coal.*, 467 F.3d at 1009 (same); *Nader*, 230 F.3d at 834 (same). "But even the strongest showing on the other three factors cannot 'eliminate the irreparable harm requirement.'" *D.T. v. Sumner Cnty. Sch.*, 942 F.3d 324, 326–27 (6th Cir. 2019) (quoting *Friendship Materials, Inc. v. Mich. Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982)). Moreover, where a prison inmate seeks an order enjoining state prison officials, the court is required to proceed with the utmost care and must recognize the unique nature of the prison setting. *See Glover v. Johnson*, 855 F.2d 277, 286 (6th Cir. 1988); *Kendrick v. Bland*, 740 F.2d 432, 438 & n.3 (6th Cir. 1984). The party seeking injunctive relief bears a heavy burden of establishing that the extraordinary and drastic remedy sought is appropriate under the circumstances. *See Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002); *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978). Preliminary injunctions are not favored, and a movant is not necessarily entitled to such relief, even if the movant has shown likelihood of success on the merits. *Benisek v. Lamone*, 585 U.S. 155, 158 (2018).

Under controlling Sixth Circuit authority, Plaintiff's "initial burden" in demonstrating entitlement to preliminary injunctive relief is a showing of a strong or substantial likelihood of success on the merits of his section 1983 action. *NAACP v. Mansfield*, 866 F.2d 162, 167 (6th Cir. 1989). Plaintiff has not made such a showing. It is not at all clear from Plaintiff's *pro se* complaint

that Plaintiff has a substantial likelihood of success on his claims. Although the Court makes no final determination on this issue, it appears at this preliminary stage that Plaintiff has not made a substantial showing of a violation of any of his constitutional rights.

Moreover, the interests of identifiable third parties and the public at large weigh against an injunction. "The federal courts do not sit to supervise state prisons." *Meachum v. Fano*, 427 U.S. 215, 229 (1976). Decisions concerning prison security are vested in prison officials, in the absence of a constitutional violation. Any interference by the federal courts in the administration of state prisons is necessarily disruptive, and "[t]ransfers between institutions . . . are made for a variety of reasons and often involve no more than informed predictions as to what would. . . best serve institutional security or the safety and welfare of the inmate." *Id.* at 225. The public welfare therefore militates against the issuance of extraordinary relief in the prison context, absent a sufficient showing of a violation of constitutional rights. *See Glover*, 855 F.2d at 286–87. That showing has not been made here. Accordingly, Plaintiff's motion seeking injunctive relief (ECF No. 3) will be denied.

<u>Conclusion</u>

The Court will grant Plaintiff leave to proceed *in forma pauperis* and will deny Plaintiff's request for injunctive relief in the form a PPO and order transferring Plaintiff to a new facility (ECF No. 3).

Having conducted the review required by the PLRA, the Court determines that Plaintiff's federal claims against Defendants James, Bolton, Nebel, and "Steve" Unknown will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's state law claims against Defendants James, Bolton, Nebel, and "Steve" Unknown will be dismissed without prejudice because the Court declines to exercise supplemental jurisdiction over them. The Court will also dismiss, for failure to state a claim, the following federal claims

against remaining Defendants Bush, Hares, Falk, and Bourdreau: claims of First Amendment retaliation against Defendants Hares, Falk, and Bourdreau, First Amendment claims for interference with access to the Courts, Fourth Amendment claims, Eighth Amendment claims for unconstitutional conditions of confinement, denial of medical care, and confinement within a restraint chair for two days, Fourteenth Amendment claims, and claims of disability discrimination.

The following claims against Defendants Bush, Hares, Falk, and Bourdreau remain in the case: First Amendment retaliation claims against Defendant Bush, Eighth Amendment claims of sexual assault against Defendants Hares, Falk, and Bourdreau, Eighth Amendment claims for failure to intervene against Defendant Bush, and supplemental state law claims.

An order consistent with this opinion will be entered.


Dated:    August 2, 2024                           /s/ *Maarten Vermaat*
                                                    Maarten Vermaat
                                                    United States Magistrate Judge